**IN THE UNITED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BRIAN SCOTT LEWIS OCASIO<br>*Plaintiff*<br><br>      *vs*<br><br><br>**DAVID P. STEINER, Postmaster General,<br>UNITED STATES POSTAL SERVICE,**<br>in his official capacity,<br>Insurance Companies X, Y, Z<br><br>*Defendants* | **Civil No.** 26-1284<br><br>EMPLOYMENT DISCRIMINATION<br>(RETALIATION; TITLE VII, 42 U.S.C. §<br>2000e-16);<br><br>JUDICIAL REVIEW OF FINAL AGENCY<br>DECISION<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW Plaintiff, Brian Scott Lewis Ocasio, through the undersigned counsel, and respectfully states, alleges, and prays as follows:

## I. NATURE OF THE ACTION

1.      This is a civil action for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the federal-sector employment provisions thereof, 42 U.S.C. § 2000e-16. Plaintiff Brian Scott Lewis Ocasio, a United States Postal Service letter carrier and a federal employee within the meaning of 42 U.S.C. § 2000e-16(a), seeks judicial review of a Final Agency Decision issued by the United States Postal Service in Agency Case No. 4G-006-10340-25 finding no discrimination on his complaint of reprisal.

1

2. Plaintiff alleges that, after engaging in protected EEO opposition activity, including but not limited to reporting and opposing what he reasonably believed to be unlawful workplace conduct, the United States Postal Service issued him a series of adverse personnel actions in close temporal proximity to that protected activity, namely a Letter of Warning, an Absence-Without-Leave (AWOL) charge, and a seven (7)-Day No-Time-Off Suspension.

3. Plaintiff seeks declaratory relief, injunctive relief, equitable relief, monetary relief and compensatory damages in the amount of Three Hundred Thousand Dollars ($300,000.00), and reasonable attorney's fees and costs, as authorized by Title VII.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted arise under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

5. This Court has additional subject-matter jurisdiction pursuant to 42 U.S.C. § 2000e-16(c), which authorizes a federal employee aggrieved by a final action of an executive department, agency, or unit thereof on a complaint of employment discrimination to file a civil action in an appropriate United States District Court.

6. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed in the

Commonwealth of Puerto Rico; the relevant employment records are maintained and administered in the Commonwealth of Puerto Rico; and, but for the alleged unlawful employment practices, Plaintiff would have continued working in the Commonwealth of Puerto Rico.

7.    Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) and (e) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Plaintiff resides in this District.

### III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELINESS

8.    Plaintiff has exhausted his administrative remedies in accordance with the regulations of the Equal Employment Opportunity Commission (EEOC) governing the federal sector, 29 C.F.R. Part 1614, prior to commencing this civil action.

9.    Plaintiff timely initiated EEO counseling and thereafter filed a formal EEO complaint of discrimination on July 15, 2025, which was docketed by the United States Postal Service as Agency Case No. 4G-006-10340-25.

10.    The Agency conducted an investigation, and the Report of Investigation was transmitted to Plaintiff and his representative on or about December 4, 2025. Plaintiff did not request a hearing before an Administrative Judge of the EEOC, and the Agency issued a Final Agency Decision pursuant to 29 C.F.R. § 1614.110(b).

3

11.    The Final Agency Decision in Agency Case No. 4G-006-10340-25 is dated February 6, 2026, and concluded with a finding of no discrimination.

12.    Plaintiff received notice of the Final Agency Decision by electronic mail (email) on February 9, 2026.

13.    Pursuant to 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a), Plaintiff had ninety (90) calendar days from receipt of the Final Agency Decision within which to file a civil action in the appropriate United States District Court.

14.    The ninetieth (90th) calendar day from February 9, 2026 fell on Sunday, May 10, 2026. Pursuant to Federal Rule of Civil Procedure 6(a)(1)(C), when the last day of a filing period falls on a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday. Accordingly, Plaintiff's deadline to file the present civil action was extended to Monday, May 11, 2026.

15.    This Complaint is therefore timely filed within the ninety (90)-day statutory period prescribed by 42 U.S.C. § 2000e-16(c), as computed under Federal Rule of Civil Procedure 6(a)(1)(C).

## IV.  PARTIES

16.    Plaintiff Brian Scott Lewis Ocasio (hereinafter, "Plaintiff" or "Mr. Lewis") is a citizen of the United States and a resident of 19 Villa Florencia, Camuy, Puerto Rico 00627-2220, within the territorial jurisdiction of this Court.

17.    At all times relevant to this Complaint, Plaintiff has been employed by the United States Postal Service as a full-time Letter Carrier (City Carrier), Level

01, Step I, assigned to the 65th Infantry Post Office, located at 100 Calle Alondra, San Juan, Puerto Rico 00924.

18.    Plaintiff is a federal employee within the meaning of 42 U.S.C. § 2000e-16(a) and is therefore covered by the antiretaliation provisions of Title VII applicable to federal-sector employment.

19.    Defendant David P. Steiner is the Postmaster General of the United States and is sued in his official capacity as the head of the United States Postal Service, the federal department, agency, or unit responsible for the personnel actions complained of herein. Under 42 U.S.C. § 2000e-16(c), the Postmaster General is the proper defendant in this action.

20.    The United States Postal Service (hereinafter, "USPS" or the "Agency") is an independent establishment of the executive branch of the Government of the United States, 39 U.S.C. § 201, and is Plaintiff's employer for purposes of Title VII pursuant to 42 U.S.C. § 2000e-16(a).

## V.  FACTUAL ALLEGATIONS

**A.  Plaintiff's Employment and Background**

21.    Plaintiff has been employed by USPS for more than a decade as a Letter Carrier (City Carrier) and, at all times relevant to this Complaint, has been assigned to the 65th Infantry Post Office in San Juan, Puerto Rico.

22.    At all times relevant to this Complaint, Mrs. Nelimar Reyes Torres served as Plaintiff's immediate Supervisor, Customer Services, at the 65th Infantry Station.

23.    Additional management officials with authority over Plaintiff during the relevant time period included Mr. Abel Catala (Acting Supervisor, Customer Services), Mr. Robert Gonzalez Negron (Supervisor, Customer Services), Mr. Elvin Rivera (Manager, Customer Services), and Mr. Jose Marengo (Postmaster).

## B.  Plaintiff's Protected Activity

24.    Beginning in January 2025 and continuing thereafter, Plaintiff engaged in a series of activities that he reasonably believed constituted opposition to unlawful workplace conduct.

25.    On March 29, 2025, after observing a large bundle of certified mail near a supervisor's desk, Plaintiff reported the suspected delay of mail through a Regional Intelligent Mail Server ("RIMS") alert and, the following day, to the United States Postal Service Office of Inspector General ("OIG").

26.    On various dates, including March 30, 2025, April 22, 2025, and April 30, 2025, Plaintiff submitted complaints and confirmations to the USPS OIG Hotline (including Complaint No. 79006) concerning what he reasonably believed to be improper handling of mail at the 65th Infantry Station.

27.    On multiple dates between January and May 2025, specifically January 13, 2025, March 29, 2025, and May 5, 16, 19, and 21, 2025, Plaintiff filed PS Forms 1767, Report of Hazard, Unsafe Condition or Practice, alleging safety-related concerns in the workplace. Supervisor Reyes Torres was identified on the PS Forms 1767 as the supervisor receiving the reports, and Manager Rivera was identified as the approving official.

28.    On or about May 21, 2025, Plaintiff intervened on behalf of a coworker, Letter Carrier Alexis Sanchez, whom Plaintiff observed being publicly yelled at and humiliated by Supervisor Reyes Torres in front of other carriers. When Plaintiff intervened and asked the supervisor to stop what he perceived to be harassment, Supervisor Reyes Torres stated, in the presence of Plaintiff and other employees, words to the effect of *"anyone who feels harassed can leave right now,"* which Plaintiff perceived as directed to him.

29.    Two coworkers of Plaintiff submitted written statements, included in the administrative investigative record, confirming that Plaintiff intervened and asked Supervisor Reyes Torres to stop harassing them.

30.    Plaintiff's opposition activity, including but not limited to his intervention on behalf of coworkers whom he reasonably believed were being subjected to harassment, constitutes protected activity within the meaning of 42 U.S.C. § 2000e-3(a) and 42 U.S.C. § 2000e-16.

## C.  Management's Awareness of Plaintiff's Protected Activity

31.    Supervisor Reyes Torres acknowledged in her sworn administrative testimony that she was aware Plaintiff had reported certified mail delays to the OIG, that Plaintiff had told her to stop harassing coworker Alexis Sanchez, and that Plaintiff had filed multiple PS Forms 1767.

32.    Manager Elvin Rivera was identified on the face of the PS Forms 1767 submitted by Plaintiff as the approving official, demonstrating his contemporaneous awareness of Plaintiff's protected activity.

33.    The Final Agency Decision expressly found that Plaintiff established the first element of a prima facie case of retaliation based on his documented protected activity and further found that he established the second element of a prima facie case with respect to Supervisor Reyes Torres and Manager Rivera, both of whom were aware of his protected activity.

**D.  Adverse Personnel Actions Following Plaintiff's Protected Activity**

*1.  Letter of Warning Issued April 24, 2025*

34.    On April 24, 2025, less than one month after Plaintiff reported suspected mail delays to the OIG and through RIMS on March 29 and 30, 2025, Plaintiff received a Letter of Warning, dated April 22, 2025, charging him with "Improper Conduct" arising out of an incident alleged to have occurred on March 29, 2025.

35.    The Letter of Warning was issued by Acting Supervisor Abel Catala. Supervisor Reyes Torres was directly involved in the underlying investigative interview conducted on April 4, 2025.

36.    The Letter of Warning was preceded by an investigatory confrontation on March 29, 2025, during which Plaintiff was, as he attests, surrounded and verbally challenged by management while he was in the process of reporting the suspected mail delay through RIMS.

37.    Plaintiff disputes the underlying allegations of the Letter of Warning and avers that the proffered reasons for its issuance were a pretext for retaliation against him for his protected activity.

38.   On July 10, 2025, through the grievance process, the Letter of Warning was reduced ("downgraded") to an "official discussion," but the disciplinary action itself was not rescinded *ab initio*.

*2.  AWOL Charge of April 25, 2025*

39.   On April 24, 2025, the same date Plaintiff received the Letter of Warning, Plaintiff began to feel physically and emotionally unwell at work, notified management, and submitted PS Form 3971, Request for or Notification of Absence. The PS Form 3971 was approved for sick leave for the remainder of that day. On the PS Form 3971, Plaintiff noted that he was "[f]eeling anxious and depressed due to management retaliation for reporting delay of mail."

40.   Plaintiff is a service-connected disabled veteran. On April 24, 2025, Plaintiff attended a session with his treating psychologist, Dr. Alejandro Sanchez-Rivera, who issued written medical documentation recommending two (2) days of rest effective April 24, 2025, that is, April 24 and 25, 2025. Plaintiff also took prescribed medication.

41.   On April 25, 2025, Plaintiff attempted to report his absence using USPS's online absence-reporting system and telephone line but, due to the effects of his prescribed medication, was unable to complete the reporting. Plaintiff thereafter communicated with management by email and provided the medical documentation supporting his absence.

42.   Notwithstanding the existence of contemporaneous medical documentation supporting Plaintiff's incapacity to perform duty on April 25, 2025,

Supervisor Reyes Torres recorded Plaintiff as Absent Without Leave (AWOL) for that date. The decision was issued by Supervisor Reyes Torres and involved Acting Supervisor Catala and Manager Rivera.

43.    Plaintiff alleges that the AWOL determination was made in retaliation for his protected activity and was issued in close temporal proximity to additional reports of suspected mail delay made through RIMS by Plaintiff.

44.    On August 25, 2025, through the grievance process, the AWOL charge was modified, with the Dispute Resolution Team agreeing that, due to mitigating circumstances, the April 25, 2025 AWOL would be changed to Leave Without Pay (LWOP).

*3. Seven (7)-Day Suspension Issued May 15–16, 2025*

45.    On May 15, 2025, Acting Supervisor Catala issued, with the concurrence of Manager Rivera, a Notice of Seven (7)-Day No-Time-Off Suspension charging Plaintiff with "Unsatisfactory Performance." Plaintiff received the Notice on May 16, 2025.

46.    The Notice cited as its factual basis Plaintiff's alleged failure to report for duty and to notify his supervisor on April 25, 2025, the same conduct that gave rise to the AWOL charge and, cited the prior April 22, 2025 Letter of Warning as a previous element of work history.

47.    The Seven (7)-Day Suspension was issued in close temporal proximity to Plaintiff's protected activity, including his reports through RIMS and to

the OIG, his filing of PS Forms 1767, and his intervention on behalf of coworker Alexis Sanchez.

48.    On July 9, 2025, through the grievance process, the Seven (7)-Day Suspension was reduced ("downgraded") to a Letter of Warning that, by agreement, would be rescinded and expunged on August 15, 2025.

## E.  Causal Connection and Pretext

49.    The adverse personnel actions identified herein were taken within a matter of days or weeks of Plaintiff's protected activity. The temporal proximity between Plaintiff's protected activity and the Agency's adverse actions is, standing alone, sufficient to give rise to an inference of retaliatory motive.

50.    The Final Agency Decision expressly found that Plaintiff established a prima facie case of retaliation, including the causal-connection element, based on temporal proximity between his protected activity in January, March, April, and May 2025 and the adverse actions taken against him on April 24, April 25, and May 15–16, 2025.

51.    Plaintiff further alleges that the reasons articulated by the Agency for each of the three adverse actions are pretextual and were not the true reasons for those actions. The Agency's explanations are inconsistent with the documentary record, including Plaintiff's contemporaneous medical documentation, his use of approved leave-reporting procedures, and the grievance settlements that reduced or modified each of the underlying disciplinary actions.

**F. Harm Suffered by Plaintiff**

52.    As a direct and proximate result of the unlawful retaliation alleged herein, Plaintiff has suffered harm, including but not limited to: emotional distress, anxiety, depression, humiliation, loss of professional reputation and standing within the workplace, harm to his health and well-being, out-of-pocket expenses for medical care and counseling, and other consequential injuries.

53.    The retaliatory adverse actions reasonably would have dissuaded a reasonable worker from making or supporting a charge of discrimination or otherwise engaging in protected EEO activity.

## VI.  CAUSE OF ACTION

**(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a) & 2000e-16)**

54.    Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

55.    Title VII, as made applicable to federal employees through 42 U.S.C. § 2000e-16, prohibits retaliation against an employee who has opposed any practice made unlawful by Title VII or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-3(a).

56.    Plaintiff engaged in extensive protected opposition activity in the months immediately preceding the adverse personnel actions complained of herein. That protected activity included, but was not limited to: (i) reporting through

internal United States Postal Service systems and directly to the United States Postal Service Office of Inspector General ("OIG") what Plaintiff reasonably and in good faith believed to be unlawful workplace conduct, including the delay of mail in violation of federal law; (ii) filing multiple PS Forms 1767, Report of Hazard, Unsafe Condition or Practice, documenting workplace conditions he reasonably believed to be unsafe or unlawful; (iii) intervening on behalf of coworkers whom he reasonably believed were being subjected to harassment in the workplace; and (iv) participating in the EEO process through the initiation, filing, and prosecution of the administrative complaint underlying this action.

57.　More specifically, on March 29, 2025, Plaintiff observed a large bundle of certified mail accumulated near the supervisors' desks at the 65th Infantry Station and, using his postal scanner, transmitted a Regional Intelligent Mail Server ("RIMS") alert reporting the suspected delay of mail. While Plaintiff was in the process of transmitting that RIMS alert, he was confronted, surrounded, and verbally challenged by management officials, including Supervisor Reyes Torres, in direct response to the protected reporting activity itself, and was warned of consequences for that conduct.

58.　On March 30, 2025, the day immediately following the RIMS alert, Plaintiff submitted a complaint to the USPS OIG Hotline reporting the same suspected delay of certified mail. Plaintiff submitted additional OIG Hotline communications and confirmations on or about April 22, 2025, and April 30, 2025.

59.　Plaintiff's RIMS and OIG reports were made through the very channels designated by federal regulation and by USPS policy for the disclosure

of suspected unlawful conduct, including Sections 664(b), 666.18, 666.22(a), 666.3, and 667.17 of the Employee and Labor Relations Manual, which expressly prohibit retaliation against employees who disclose information that they reasonably believe evidences a violation of law, rule, or regulation. Plaintiff reasonably and in good faith believed that the conduct he was reporting violated federal law and applicable USPS regulations, including 18 U.S.C. § 1701, which makes it a federal offense knowingly and willfully to obstruct or retard the passage of mail. Plaintiff's reporting activity is therefore protected opposition activity within the meaning of 42 U.S.C. § 2000e-3(a) and 42 U.S.C. § 2000e-16.

60.    In addition to his reporting through RIMS and to the OIG, between January and May 2025 Plaintiff filed at least eight (8) PS Forms 1767, Report of Hazard, Unsafe Condition or Practice, specifically on January 13, March 29, and May 5, 16, 19, and 21, 2025, each documenting workplace conditions that Plaintiff reasonably believed to be unsafe or unlawful. Supervisor Reyes Torres was identified on the face of those forms as the receiving supervisor, and Manager Rivera was identified as the approving official, establishing contemporaneous management awareness of each successive instance of Plaintiff's protected reporting.

61.    Plaintiff also engaged in protected opposition activity on May 21, 2025, when he intervened on behalf of his coworker, Letter Carrier Alexis Sanchez, whom Plaintiff observed being publicly yelled at and humiliated in the workplace by Supervisor Reyes Torres. Plaintiff's intervention requested that Supervisor Reyes Torres cease what Plaintiff reasonably believed to be harassing conduct directed at a coworker.

62.    The Final Agency Decision in Agency Case No. 4G-006-10340-25 expressly recognized each of these activities; Plaintiff's RIMS report, his OIG Hotline submissions, his filings of multiple PS Forms 1767, and his intervention on behalf of coworkers, as protected activity, and found that Plaintiff. The Final Agency Decision further found that Supervisor Reyes Torres acknowledged her contemporaneous awareness of Plaintiff's reports to the OIG that certified mail was delayed, of Plaintiff's having told her to stop harassing Letter Carrier Sanchez, and of Plaintiff's filings of multiple PS Forms 1767.

63.    Management officials of the United States Postal Service with authority over Plaintiff, including Supervisor Reyes Torres and Manager Rivera, were aware of Plaintiff's protected activity, as expressly found in the Final Agency Decision.

64.    Within weeks of Plaintiff's protected activity, the United States Postal Service took materially adverse employment actions against Plaintiff, namely: (a) issuing him a Letter of Warning on April 24, 2025; (b) charging him AWOL on April 25, 2025; and (c) issuing him a Seven (7)-Day No-Time-Off Suspension on May 15–16, 2025. These materially adverse actions would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

65.    A causal connection exists between Plaintiff's protected activity and the adverse personnel actions taken against him, as evidenced by, among other things, the very close temporal proximity between the protected activity and the adverse actions, the involvement of the same management officials who were

aware of the protected activity, and the pretextual nature of the Agency's articulated reasons.

66.   Defendant's actions were taken with malice or with reckless indifference to Plaintiff's federally protected rights under Title VII.

67.   As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including emotional distress, mental anguish, humiliation, harm to reputation, out-of-pocket expenses, and other compensable injuries.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brian Scott Lewis Ocasio respectfully prays that this Honorable Court enter judgment in his favor and against Defendant David P. Steiner, in his official capacity as Postmaster General of the United States Postal Service, and grant the following relief:

A. Reverse the Final Agency Decision issued on February 6, 2026 in Agency Case No. 4G-006-10340-25 and enter judgment for Plaintiff on his claim of retaliation;

B. Declare that the actions of Defendant complained of herein constitute unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) and 42 U.S.C. § 2000e-16;

C. Permanently enjoin Defendant, its agents, officers, supervisors, and successors, from engaging in further retaliation against Plaintiff and from

16

maintaining or relying upon the retaliatory disciplinary actions identified herein;

D. Order Defendant to expunge from Plaintiff's personnel records the Letter of Warning, the AWOL/LWOP entry, and the Seven (7)-Day Suspension/Letter of Warning (and all related documents and references) identified in this Complaint;

E. Award Plaintiff make-whole equitable relief, including back pay, lost wages, lost benefits, restoration of leave, and prejudgment interest thereon;

F. Award Plaintiff compensatory damages in the amount of Three Hundred Thousand Dollars ($300,000.00) for the damages, emotional distress, mental anguish, humiliation, inconvenience, loss of enjoyment of life, harm to well-being, and other injuries suffered as a result of Defendant's unlawful retaliatory conduct, together with reimbursement of out-of-pocket medical, counseling, and medication expenses, as authorized and limited by 42 U.S.C. § 1981a;

G. Order Defendant to provide training to its management officials at the 65th Infantry Station and other relevant facilities on the antiretaliation provisions of Title VII;

H. Award Plaintiff his reasonable attorney's fees, expert fees, litigation expenses, and costs of this action pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 2000e-16(d);

**I.** Award Plaintiff post-judgment interest as provided by law; and

**J.** Grant such further and additional relief as this Honorable Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and 42 U.S.C. § 1981a(c), Plaintiff hereby demands a trial by jury on all issues so triable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of May, 2026.

*s/José Efraín Martínez Santiago*
**JOSÉ EFRAÍN MARTÍNEZ SANTIAGO, ESQ.**
USDC-PR Bar No. 309704
1055, Ste. 707, Ave. John F. Kennedy,
San Juan, PR 00920-1707;
Phone: (939) 904-8153
Email: jmartinez@tswpr.com

*Counsel for Plaintiff*